May it please the court, Ray Karamadi on behalf of Appellant Hossein Zeinali. Your Honor, Appellant's opening brief addressed six issues dealing with three orders from the district court. And unless the court has a preference, I'm going to go through the issues as presented in my opening brief. The first issue presented was whether or not the district court had subject matter jurisdiction with respect to Mr. Zeinali's claims. The district court held that it lacked subject matter jurisdiction because a review of Mr. Zeinali's claims would necessarily require a review of the merits of the security clearance decision by the Department of Defense. In making its ruling, the court failed to review the nature of Mr. Zeinali's claims. And had it done so, it would have shown that it did not require a review of the merits of the claims. Counsel, I understand your perspective on this, and I guess where I need your help is the question of whether EGAN and Brazil apply against private employers. Now, there's a Tenth Circuit case, Beattie v. Boeing, that suggests that it is, whereas Mackey v. Chertoff, a Third Circuit case, suggests that it isn't. Obviously, one is helpful to you, one is not. From your perspective, what's the logic of saying that EGAN doesn't apply in the case of a private employer? Your Honor, our position is that EGAN does apply with respect to a private employer. But you're saying that the district court doesn't have jurisdiction because it would require the court to investigate the security clearance details. No, the position that we take is that as far as whether or not a private employer, for example, a private employer is involved in the decision to revoke an employee's security clearance, and that employee states that that private employee's role in the replication of the security clearance was discriminatory, then there might be jurisdiction. You've got different issues here. EGAN, the Supreme Court made it very clear that the federal courts can't examine the executive branch's reasons for denying a security clearance. So that's the genesis of the doctrine. The question here is Raytheon, apparently, at least what the allegation is, that they required that your client have a security clearance. I gather your argument is you don't really need to get into the executive decision about the security clearance, Your Honor, speaking of the district court. You know, they either have it or they don't have it, but the reality is as long as you're not investigating what the executive branch did, you still have jurisdiction. That's your position. That's our position, Your Honor. Correct. So I may have misunderstood. So if that's the case, that's more like the Mackey approach in the Third Circuit. Why is, though, the Beattie case versus Boeing out of the Tenth Circuit wrong? They view it differently. Are you familiar with that case? I had reviewed the case, Your Honor. Shouldn't it, echoing that, shouldn't it really be determined on the basis of whether you make a sufficient allegation, an Iqbal Twombly allegation sufficient to show that the reason for imposing the security clearance requirement was a discriminatory reason by the private employer? Otherwise, if you don't make that showing or that allegation, aren't you stuck with the line of cases that says we're not going to second guess or get into why the executive branch denied the clearance? Don't you have to make that showing? Isn't that what the law ought to be here? I think the point that we're trying to make, Your Honor, as far as the decision of the denial of the security clearance and the decision to terminate, our position is that they're separate and distinct. So if the Court is saying whether we have to show that the Department of Defense decision to revoke the or deny the clearance was discriminatory, I don't believe we need to show that, since we are sort of putting a separation between those two decisions. But don't you have to show, shouldn't the law be, you must show, at least in a Twombly sense, an Iqbal plausible claim that the reason for requiring the security clearance was based upon illegal discriminatory intent? Don't you have to at least make that allegation? I do not believe we have to make the allegation that we have to prove that Raytheon's reason for imposing a security clearance requirement was discriminatory in and of itself. The company may have a policy of requiring security clearances for some of its employees. How that policy is implemented in each individual circumstance may or may not be discriminatory. So your argument is you don't take issue with the fact that a security clearance is required. You're just saying there are other people who didn't have the security clearance who were allowed to remain employed, and my client was terminated when he didn't have his security clearance. So there's disparate treatment for similarly situated employees. Is that what you're arguing here? That's correct, Your Honor. As far as how the policy at Raytheon was implemented on a case-by-case basis may be discriminatory. For example, there are some companies and some private contractors where a position such as a security card requires and mandates that a security clearance be approved in order for that employee to be able to perform their job duties. The position that Mr. Zainali held and the positions at Raytheon, however, do not have that hard and fast rule. Employees, whether or not they have security clearances, can perform work at the company, such as engineers and other types of work. And therefore, it all really depends on the fact of the case. In Mr. Zainali's case, the fact that he was denied a security clearance was not the basis for his termination. And the company stated that it was the fact that there was unclassified work and his work performance that was really the result of the cause of the termination. I have a question for you. I don't recall the record correctly on this, but I know that there was that allegation, but I thought there was also an allegation on the part of the company that they did terminate him in part because he ultimately was denied the security clearance. Well, the denial of the security clearance, I believe, started the discussion as far as whether or not Mr. Zainali That was in, what, the fourth year or something like that? That's correct, Your Honor. But the point that we're trying to make is that Raytheon did not have a policy of terminating an employee that had their security clearances denied or revoked. There were two engineers that had their clearances revoked in 2004, and they would continue to be... That's your disparate treatment argument that Judge Rawlinson asked about, right? Yes. And therefore, our point is, in this case, the treatment that he received was disparate from the other engineers, and therefore, if the Court had applied that analysis, it would have shown that that type of an analysis did not require any review with respect to the Department of Defense's decision to deny the claim. But, you know, there's three levels, and that really gets into the second issue, and that's whether or not you made a plausible and then supported analysis at the third level. So they gave an explanation for failure to promote, for example, as opposed to termination. They just wanted to focus on promotion. And that is that your client typically, and I don't think you controverted this, typically it's the top third of the category that's eligible for promotion. I'm sure there's exceptions. That's typically the rule in Raytheon. Raytheon's a federal contractor. You know, we don't have any big extensive record of discrimination with Raytheon. I'm sure they have all of the proper personnel and human relations factors, HR factors, and plans in place. But basically the record here is that your client was down in the third, bottom third. So why isn't that sufficient for the judge on the third prong of the analysis at summary judgment to say, you just haven't met the burden here? Assuming that we assume there is jurisdiction and we go to the pretext analysis for the denial of promotion claim, our argument to that would be that the ranking that the court is referring to apply only to systems engineering. And we depose a number of human resources personnel and individuals involved with promotions at Raytheon. They testified that Mr. Denali was eligible to move from an E04 to an E05 position, Robert Wozniak and I believe another HR person. And therefore, although he made the ranking within systems engineering had him ranked at the bottom, he would have been able to move to other positions. And our position is that the two memos that Mr. Pickens placed in his personnel file and some of the discriminatory animus of the supervisors resulted in his low ranking within even systems engineering. Isn't there enough in this record for the district court to conclude that's not pretextual, that's a straight answer and it's a sufficient justification for failure to promote? We would argue the opinions in the company that he was eligible or should have been one of the exceptions. But the straight answer is he's in the lower third, the normal rule is the top third. And isn't that enough, my question is, on the third prong analysis for the district judge to conclude you haven't answered? We would argue it's not enough, Your Honor, for a few reasons. First, he was offered a promotion to a position in Raytheon on the East Coast. And so our focus with respect to the denied promotions are in San Diego. And therefore, this is a question of fact and it's the summary judgment state, there's minimal evidence that's required in order for the case to be able to proceed to trial. And based on the fact that he had an offer on the East Coast and that HR people had testified that Mr. Zanelli was eligible to be promoted to an EO5, but yet his supervisor stated to HR that he was not. And in addition to the other fact with respect to comments made by his supervisor that working at Raytheon, he had no future at the company, as well as some of the other discriminatory statements earlier on, coupled together should be enough for him to satisfy this, the burden at summary judgment, whether or not those facts would be sufficient at trial is a separate issue. So you're saying that there are enough material issues of fact that summary judgment was inappropriate? Yes, Your Honor. The other points that I'd like to make, Your Honor, with respect to his violation of public policy in the 11-025 claims, the violation of public policy claim, I believe the Court failed to even consider his TAMNI claims, although Mr. Zanelli brought those issues up in paragraph 18-22 and paragraph 57 of his complaint and also in his opposition to the motion for summary judgment. And the other issue with respect to his 11-025 claim, I believe we presented that issue with respect to the Court not considering his claim and claiming that he did not raise it in his opposition brief, which we believe were pointed out. And the two other issues remaining, Your Honor, with respect to the court's denial of Mr. Zanelli's request to amend his complaint, the Court found that there was undue delay and prejudice to Raytheon. As our brief mentioned, although there was somewhat of a delay in bringing the leaf to amend, we did notify Raytheon about our request to amend, and we did do a couple of additional depositions before we requested the motion. And I think that I believe the court's district court focused on prejudice to Raytheon. However, the law, in our opinion, is that there has to be improper or unfair prejudice to the company. And I do not believe that there is such improper or unfair prejudice because Raytheon will not need to do any – we are not requesting to do any additional discovery in this case, and all we're requesting is to have an opportunity to amend our complaint for purposes of trial. And the last point that we'd like to make, Your Honor, with respect to the document demand that we requested, the district court denied our request for the personnel information of similarly situated employees. And the error that we believe occurred in that – Did you ask for the personnel files or the evaluations? We asked for the evaluations, Your Honor, the BPE scores and specific documents related to the similarly situated employees. And I believe this is an important area for the court to consider, is that the district court focused on the area of work for Mr. Zainali. However, we believe that the area of focus should have been on the alleged discriminator, meaning what was his area of influence, not what the employee's area of work was. Thank you. Thank you. May it please the Court, John Adler, on behalf of the respondent Raytheon Company. Thank you to the panel for hearing this matter. I'd like to touch on just a couple of things at the outset, and I know the Court likely has questions. The brief that was filed by the plaintiff in the opposition to the summary judgment motion, as well as the brief before this Court, really focused on two points, both of which failed. One was whether the position that Mr. Zainali was in at the time of the separation decision required a security clearance. And in the record at ER 0274, you will find the form which transferred Mr. Zainali to the new position, and it clearly indicates that a security clearance is required and it must be at the secret level. Mr. Adler, I guess I appreciate your point there. I guess my concern is, does Raytheon agree that Egan doesn't block the Court from jurisdiction here? This is a private company. There is no need to go into the determination by the executive branch of why he should or should not have had a security clearance. Why isn't there jurisdiction here? The Egan case clearly applies to both a private contractor and a governmental entity. Are you giving authority to that effect? Yes, Your Honor. We would look at, for that, the Stepney case, S-T-E-H-N-E-Y v. Perry, 101, Fed 3rd, 925. It's a Third Circuit decision, 1996. This was a private think tank, and the analysis of Egan and this Court's analysis in Brazil was fully applicable. Do you have any cases from our Court that find that it applies in a private setting? I have not found any, Your Honor. I don't think there are any. And I'm happy to hear that, because I didn't find it. That's always reassuring. Let's just take the logic of it, though. I mean, the Supreme Court seemed to be concerned in Egan with the fact that they didn't want federal courts rummaging through CIA, FBI, whatever, files to determine whether or not a security clearance had been properly done. That's for the executive. They're saying, you just stay out of this. But in this case, none of that's involved. Either he has a security clearance or he doesn't have a security clearance. But that doesn't involve the federal courts investigating why he got or didn't get one. And that's the point of Egan, is it not? Well, it's one of the points of Egan, Your Honor. And as it moved through, Egan obviously was then taken by other courts, such as this Court in Brazil, where the Court said it's an insurmountable hurdle. If you're going to apply the McDonnell-Douglas test to the analysis, which applies either to a governmental entity or to a private entity, there was no distinguishing. If you're applying McDonnell-Douglas on a three-part test, that this Egan presents what this Court said, an insurmountable hurdle. But in what sense? I mean, where you come back with a business reason for it, and you say the guy doesn't have a security clearance. Okay, fine. Either the contract requires it or it doesn't require it. It's a factual issue. There's no requirement here that the Federal Court investigate whether Mr. Zanolli should have had a security clearance in the first place. That's not the issue before the Court. So I don't think Brazil says anything about what you're talking about. Unless, in other words, shouldn't the rule be that Egan precludes us from looking into the Executive Department's decision. Therefore, there must be at least an allegation, a supportable allegation, and in summary judgment, a supportable allegation, that the decision to include a security clearance requirement was illegal discrimination. That's what the courts are limited to deciding. If it's clear that there's a security clearance required and appropriately required, that's where we stop. We can't go any further. In other words, did you impose a security clearance requirement for the janitor who comes during daylight hours, reasonable work hours when everybody else is present? If you did, there's jurisdiction. If you required security clearance across the board for this kind of a position and it was appropriate, non-protectual, the court has to stop under Egan. It can't get into the question of whether security clearance was properly given or not. That's my understanding. You do have jurisdiction to ask the initial question. Is there sufficient support for a jury question? Was it a pretextual requirement? Before you get to that, I'd like to explore what Judge Jones just said because I have a different view of Egan. He phrased this in terms of whether the company in position of the security clearance is the issue. Whereas Egan talked about whether the executive branch's reasons for denying security is the reason for jurisdiction, jurisdictional issues. Do you have a view on that? I mean, you obviously are an expert in Egan. Is Judge Jones' position found in Egan or is it found in some other case? To answer your question directly. That's a wonderful question to ask whether my colleague and I agree. The Egan line of cases did not start out to reach the same dispositive, insurmountable hurdle level that we find ourselves today. This Court in 1995 for 15 years has said it's an insurmountable hurdle. The courts have taken. What's an insurmountable hurdle? Reaching either the second or third prong of the McDonnell-Douglas test is an insurmountable hurdle. Why? Because once the denial of security clearance is proffered as that second prong, the Court analyzes it. This Court analyzed it and said that the stronger the reason and the less pretextual the reason, the more difficult the burden of showing any type of pretext. And when you have a dispositive reason, as we do here, then you never reach pretext. But those cases, counsel, if I'm wrong, those cases go off on the line that if in the McDonnell-Douglas analysis, the business says, you know, we need to have a security clearance. And if the pretextual argument coming back from the plaintiff is, no, this was all just a setup. You know, the reality is I'm entitled to a security clearance. You know, you really can't deny me on this. This was done because I was black or, in this case, Iranian, whatever the case may be. That's what's barred. But in this case, we're talking about whether you get over the threshold issue of whether the Court has jurisdiction. And I frankly don't see under Egan or Brazil or any of the cases that you've cited where when a private company just simply says across the board, this is a requirement. This is a predicate for your being hired. The Court is never asked to get into whether the security clearance should or should not have been granted. And there's nothing in the pleading that talks about that. The pleading is simply dealing with what Raytheon allegedly did, not what the federal government did or the executive branch. Am I misunderstanding something? Well, I wouldn't say you're misunderstanding anything, Your Honor. What I think is that in looking at the entire line of cases, I have not seen anything that allowed the case to survive on the merits. There is not one decision. But that's where you're challenging either the revocation of a security clearance or the failure to grant a security clearance. If his argument is I accept the fact that I was not granted a security clearance, I'm not challenging the fact that my security clearance was denied. What I'm saying is there are other people whose security clearances have been denied and they have been retained at the company. Why wouldn't we have jurisdiction to look at that issue? Two reasons, Your Honor. One is structural. Within all of the decisions that we've seen, there has been no case that has allowed this to proceed under a McDonnell-Douglas test. That's what the lower court found and the lower court found correctly. You look at every line of cases, and if McDonnell-Douglas is the operative analysis and I have a second basis as well. But tell me the case that is discussing a scenario where the security clearance itself is not being challenged. Oh, there are many of them, Your Honor. Okay. Give me your strongest one where the plaintiff is not challenging the security clearance denial itself. All right. A Ninth Circuit case, please. Oh, Ninth Circuit. Well, there's a paucity of Ninth Circuit opinions on this matter. I have one. You make my job a little bit more difficult, Your Honor. But clearly, even looking, there's an unpublished case, which the district court cited in its opinion and noted that it was unpublished. Ninth Circuit unpublished? Yes. If you're relying on a Ninth Circuit case, you're on thin ice. Indeed, there's no ice at all. You're walking on water. So what other circuit cases do we have that we ought to follow? Every circuit that has looked at it, Your Honor. Okay. Give me your strongest case for a circuit court that has looked at a case where the security clearance itself is not being challenged, but there's a McDonnell-Douglas analysis. All right. N.L. Gniney. It's E.L.-G-A-N-A-Y-N-I. That's a third circuit case. Exactly, Your Honor. So we're going to go to that case, and you're going to point me to the language. I am. Okay. And they cite the Staney v. Perry case that I cited earlier on. Let's go to the --"tell me the fact." Show me where it's the security clearance is not being challenged. If we --" okay, let me find out which --" I have it on a different printed page, but this is at page 183 of the opinion. Okay. They talk about drawing a distinction in Mackey v. Chertoff, and I would just, while I'm touching on Mackey v. Chertoff. Okay. That page says, we adhere to Egan's holding that the merits of the revocation decision were not revealable. The merits of the security decision. But I'm asking you for a case where that issue is not presented. I was going to look, I was going to reference the panel to a different aspect of that case, Your Honor. When they talk later on that page, the paragraph that brings, this Court drew a similar distinction in Mackey. And then, but however, the Court then goes on to say, we reviewed the plaintiff's claim on the merits, but were careful to note in doing so that we could not question the motivation behind the decision to deny Mackey's security clearance. Exactly. That's exactly right. But we're asking you for a case where the plaintiff is not challenging the security clearance. Because that's what we have here. He's not challenging the security clearance. He's just saying, I don't have a security clearance, but there are other people who don't have a security clearance, and they're still allowed to work, and I'm fired. In the Elgin-Iny case, as we go along in the decision, and this is now at page, let's see what note it is, I believe 186, they say, for similar reasons Elgin-Iny could never establish that the DOE's national security explanation was a pretext for a discriminatory motive. He could never gather the evidence necessary to prove that claim. Counsel, you're going right back to the very thing that Judge Rollins and I are talking about. That involves where he's challenging the bona fides of the security decision itself. In this case, as we have both pointed out to you, you have somebody who's alleging, he's not saying, hey, you know, they worked me over, there was a bad decision about security. He's simply acknowledging he doesn't have a security clearance. He's saying there's two other people in the department that were retained who had no security clearance. You treated him differently. This is a threshold issue because basically the district court said there's no jurisdiction here because of Egan, and Judge Rollins and I at least are trying to find out is there any case law substantiating the district court's decision in this case where there is no attack on the security clearance determination itself? Well, Your Honor, in Perez v. the FBI. So that's your second strongest case? That is a Fifth Circuit case, Your Honor. They indicate there, inciting Brazil, it's an impermissible intrusion because the court would have to examine the FBI's proffered reasons for revoking. But this is, again, the FBI, a personnel decision and the FBI gets into, that is inextricable because the FBI is making these decisions about whether he gets a security clearance. Again, as we have all said here, this is a situation where the allegation is, no problem, I don't have a security clearance, I'm not attacking that. I'm attacking what Raytheon did because it, for example, had two people in the department who didn't have security clearance either and they kept them, notwithstanding what their contract said. Is it fair to say that the district court had subject matter jurisdiction? That Egan doesn't block it? The district court did not have subject matter jurisdiction over this matter. Because? Because the analysis of the discrimination claims and the retaliatory termination claims all required an analysis that ran under McDonnell Douglas. And if you run an analysis under McDonnell Douglas, the line of cases that begin with Egan through Brazil for 22 years have said, you cannot do it. I think you're misreading those cases, Counsel. In the facts of those cases, absolutely, where there's an attack on the determination of the security clearance itself, but we don't have that allegation here. What you want us to rule is any time that there is a security clearance in the mix, we don't have jurisdiction. I think that if the articulation of the reason is a lack of security clearance, then I think McDonnell Douglas requires that that is a controlling reason and you don't get to prejudge. That's what I'm saying. You're arguing any time the phrase security clearance is invoked, jurisdiction necessarily fails. See, in Ryan versus, I'm just trying to find in my notes, the Ryan versus Reno case out of the District of Columbia circuit basically stands for the proposition that you can't make an end run around Egan in Brazil. Not trying to. He's not trying to. He's not trying to. He accepts the security decision. He accepts it. He's not trying to challenge the security decision. He's not trying to challenge the legitimate non-discriminatory reason controls. But you can't say just because you invoke the security decision, you can't see whether or not that decision is implemented in a disparate manner. You can't. I mean, so if every single, if every single Iranian who was denied a security clearance was fired, and every single non-Iranian who was denied a security clearance was retained, you're saying that we wouldn't have jurisdiction to determine whether or not there's a Title VII violation? I have no authority that you would have jurisdiction. Every case decided since Egan has indicated that it's an impermissible inquiry. And your argument is basically that there can be no Title VII cases involving Boeing, Northrop Grumman, Raytheon, or any other company that contracts with the federal government. That's a preposterous position, isn't it? I don't believe so, Your Honor. I think when we look at- It's your position. No. No. I would not touch it. Absolutely. You can raise constitutional. If you can implicate constitutional issues, you are permitted to go forward. How do you get out of it? Does Egan say that? The line of cases does, Your Honor. And all I know is that, you know, I know it's not applicable because there wasn't any constitutional issue raised in this case. So I wasn't prepared to address that, nor was I prepared to talk about the distinction because counsel never waived any distinction between private and public employers. That is a waived issue. But he made it clear that he was not challenging the security clearance decision. That was clear from the briefs. At least it was clear to me from the briefs. But there was no articulation of the issue that the court is questioning. It's an issue of law. That's an issue of law. And so we keep the authority to explore any issues of law and parameters of the cases that are cited. So the cases that are cited, we can explore them to see, especially since there's a paucity of case law in the Ninth Circuit. So we have to explore what's out there and see as a matter of law what ruling we need to make. Particularly when it regards jurisdiction. Yeah. I understand. And let me just focus on a couple of other things. And I know I've run over. You can see your time, so if you could wrap it up. Thank you. In this particular case, to touch on the issue of the security clearance would be inappropriate because there was a disclosure by Mr. Zanale on November 1st as to the reason why the security clearance was denied. Once that information came into the possession of Raytheon and became a matter that was to be considered, in that discussion he pleaded for an opportunity to reapply. Dave Robinette, who was in charge of the engineering division, said, what would change if you reapply? Mr. Zanale was silent because he had close siblings living in Iran. And it was clear that the reason was foreign preference, that there was no longer any opportunity to get it. When Mr. Robinette was examined in his deposition about that issue, his answer was, I listened to it. I heard what he had to say. And in 10 reapplications, he would never get a clearance. Okay. We understand. We understand your position. Okay. All right. Thank you. May I hit two other? No. You are six minutes over your time. So thank you. We understand your position. You really do. There were many other issues, however, Your Honor. We understand. Hopefully your briefing covered it. That's the purpose of briefing. Thank you. One minute for rebuttal. The only point I'd like to make, Your Honor, is the fact that at the time that Mr. Zanale disclosed the reason behind the denial, Raytheon had already made the decision to terminate. And, therefore, it was not considered in the decision. All right. Thank you. Thank you to both counsel. The case is argued and submitted for decision by the court. Thank you. Thank you. The final case on calendar for argument is Marlowe v. UPS.
judges: Jones, Rawlinson, Smith M.